UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALL-CITY METAL, INC.,

                                      Plaintiff,                          **REPORT AND**
            -against-                                                     **RECOMMENDATION**
                                                                          18-CV-958-RRM-SJB
SHEET METAL WORKERS' INTERNATIONAL
ASSOCIATION LOCAL UNION 28

                                      Defendants.
------------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

        Plaintiff All-City Metal, Inc. ("All-City") commenced this National Labor

Relations Act ("NLRA")[1] case against Sheet Metal Workers' International Association

Local Union 28 ("Local 28") and Eric Meslin ("Meslin") alleging they used flyers and a

large inflatable rat as an intimidation practice to force All-City to hire Local 28 members

at its projects.[2]  (Compl. dated Feb. 13, 2018, Dkt. No. 1; Second Am. Compl. dated May

24, 2019, Dkt. No. 21).  After an Amended Complaint was filed, (Am. Compl. dated May

18, 2018, Dkt. No. 11), Meslin was dismissed by stipulation, (Order dated May 25, 2018).

Local 28 then indicated its intent to file a motion to dismiss, and the Honorable Roslynn

---

[1] All-City's lawsuit is based on Section 303 of the Labor-Management Relations
Act ("LRMA").  "The LMRA amended the NLRA in 1947, which became known as the
Taft–Hartley Act, and it comprises Title I of the NLRA." *Vlaskamp v. Eldridge*, No. 01-
CV-7348, 2001 WL 1607065, at *2 (S.D.N.Y. Dec. 17, 2001).  "Section 303 of LMRA
provides a private right of action to persons affected by unfair labor practices under
section 8(b)(4) of the NLRA." *BD Dev., LLC v. Local 79, Laborers Int'l Union of N. Am.*,
No. 14-CV-4876, 2016 WL 402381, at *2 (E.D.N.Y. Jan. 15, 2016) (quotations omitted).

[2] Although "inflatable" is never used to describe the rat, (Second Am. Compl.
¶¶ 23–26), the Court assumes All-City is not describing a real "approximately fifteen feet
high," "repugnant and hideous" rat because "rodents of unusual size?  I don't believe
they exist." *See* The Princess Bride (20th Century Fox 1987); *see also* William Goldman,
*The Princess Bride* 188 (30th anniversary ed. 2003) (defining R.O.U.S., Rodents of
Unusual Size).

R. Mauskopf referred the matter to the undersigned for report and recommendation. (Order dated Mar. 22, 2019).  After All-City filed a Second Amended Complaint, (*see* Second Am. Compl.), Local 28 filed a motion to dismiss, (Mot. to Dismiss dated June 28, 2019, Dkt. No. 22).  The motion was fully briefed as of August 9, 2019.  (Reply in Supp. of Mot. to Dismiss dated Aug. 9, 2019, Dkt. No. 26).  For the reasons stated below, it is respectfully recommended that the motion be granted, and the Second Amended Complaint be dismissed with prejudice.

FACTUAL AND PROCEDURAL HISTORY

I.      The Parties and Commencement of Litigation

All-City is a New York corporation that supplies sheet metal and duct work to mechanical contractors and building owners in and around New York City.  (Second Am. Compl. ¶¶ 5, 13).  Local 28 is a labor organization under the NRLA that "represent[s] employees in industries affecting commerce[.]" (*Id.* ¶¶ 11–12).  Meslin was a person who "acted with the authority of Local 28." (Am. Compl. ¶ 9).

On February 13, 2018, All-City sued Defendants alleging they engaged in unlawful labor practices in violation of the NLRA.  (Compl. ¶¶ 1, 28–29).  An Amended Complaint was filed on May 18, 2018.  (*See* Am. Compl.).  Meslin was dismissed with prejudice by stipulation shortly thereafter.  (Stipulation of Discontinuance dated May 24, 2018, Dkt. No. 12; Order dated May 25, 2018).

Local 28 filed a motion for a pre-motion conference in anticipation of a motion to dismiss the Amended Complaint.  (Mot. for Pre-Mot. Conference dated May 29, 2018, Dkt. No 13).  And All-City sought a stay of discovery, (Mot. to Stay dated May 31, 2018, Dkt. No. 14), which the Court granted, (Order dated June 19, 2018).

The Honorable Roslynn R. Mauskopf referred Local 28's request to move to dismiss to the undersigned for any necessary pre-motion conference and for a report and recommendation on any motion filed. (Order dated Mar. 22, 2019). The Court held a pre-motion conference on April 24, 2019. (Min. Entry dated Apr. 24, 2019). After the conference, All-City was given leave to amend the complaint a second time, and the Court set a briefing schedule for any motion to dismiss, as to either amended complaint. (Order dated Apr. 24, 2019).

II.    The Second Amended Complaint

All-City filed a Second Amended Complaint on May 24, 2019.[3] (Second Am. Compl. dated May 24, 2019, Dkt. No. 21). The Second Amended Complaint alleges that Local 28 violated the NLRA's proscription of unfair labor practices. (*Id.* ¶¶ 43, 46, 80). The Second Amended Complaint alleges that:

Local 28 is "in direct competition" with another labor union, Local 295. (*Id.* ¶ 19). Each All-City employee that worked at All-City's "various jobsites throughout New York City and the greater metropolitan area" was "a member of Local Union 295." (*Id.* ¶ 31).

For more than six years, Local 28 "visited" and "appeared at" jobsites where All-City had been retained for work and "falsely claimed" that All-City employed non-union labor. (*Id.* ¶¶ 20, 21). These allegations were made to the owner or lessor of the jobsite premises, or the general or mechanical contractor working on the site. (*Id.*). Employees at these jobsites often held "Union Cards" that indicated they were members of Local

---

[3] The allegations in the Second Amended Complaint are accepted as true for the purposes of considering a Rule 12(b)(6) motion to dismiss. *See Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017).

295.  (Second Am. Compl. ¶ 22).  As part of its alleged improper practices, Local 28

would bring, or threaten to bring, a 15-foot-high inflatable rat to the worksites.  (*Id.*

¶¶ 23, 24, 59, 64, 79).  This "repugnant and hideous" rat was placed in a

"confrontational" manner by Local 28 on multiple jobsites on public thoroughfares.  (*Id.*

¶¶ 23–26).  The rat would allegedly remain in place until All-City stopped work on a

project.  (*Id.* ¶¶ 23, 26).

All-City alleges that "[e]ach and every act of Local 28 was committed in violation

of" the NLRA's "secondary boycott" provision, 29 U.S.C. § 158(b)(4), and this resulted in

All-City being injured, losing profits, and sustaining other damages.  (*Id.* ¶¶ 27, 43, 46–

47).  Ultimately, "[b]y virtue of these acts by Local 28, [All-City] was forced or required

to cease employment of Local 295 members in favor of Local 28 employees."  (*Id.* ¶ 91).

All-City demands damages of $100,000 or more for alleged violations.[4]  (Second Am.

Compl. ¶ 93).  These allegations are detailed below.

A.  <u>641 5th Avenue</u>

All-City had a contract with Arista Mechanical ("Arista") to provide All-City

employees for a project at 641 5th Avenue in New York City in December 2017.  (*Id.*

¶¶ 28, 29).  Shawmut Contracting ("Shawmut") was the general contractor and Arista

was the mechanical contractor.[5]  (*Id.* ¶ 32).

---

[4] All-City does not allege separate causes of action, and the parties' briefing treats
the Second Amended Complaint as containing a single federal unfair-labor-practices
claim under Section 8(b)(4) of the NLRA.  While separate instances of conduct are
alleged, these instances are part of the same cause of action.  In addition, while the
Second Amended Complaint alludes to state law, (Second Am. Compl. ¶ 3), there is no
state law claim actually alleged.

[5] Generally, an owner or lessor of a premise initiates renovation or construction
work.  (Second Am. Compl. ¶ 14).  The owner often retains the services of a general

Beginning on December 20, 2017, Local 28 and Meslin allegedly "interfered with [All-City]'s work, workforce and its operations," by "making threats to both Shawmut and Arista." (*Id.* ¶ 34). Local 28 insisted that All-City, Shawmut, and Arista replace All-City's Local 295 members with Local 28 members. (*Id.* ¶¶ 35, 36, 37). Local 28 was aware that All-City's contract with Arista required the use of union labor. (*Id.* ¶¶ 38, 39). Local 28 also knew that All-City was using Local 295 members, but nonetheless insisted that its own members be substituted. (Second Am. Compl. ¶¶ 40–42). Some of the conduct Local 28 engaged in at this site included displaying the inflatable rat and distributing untruthful flyers. (*Id.* ¶ 55). Local 28 engaged in this conduct "to induce" Shawmut and Arista to terminate All-City and employ union members not from Local 295. (*Id.* ¶ 49).

Local 28's conduct "forced or required" Arista and All-City to employ Local 28 members. (*Id.* ¶¶ 44, 50). All-City "was forced and coerced" into ceasing use of its own employees, Local 295 members, "in favor employees of Leader Sheet Metal who employed members of Local 28." (*Id.* ¶ 52). This ultimately forced All-City to stop using "its own workforce on the project." (*Id.* ¶ 54).

B. 90 Park Avenue

On September 1, 2015, Local 28 engaged in similar conduct at a jobsite at 90 Park Avenue. (Second Am. Compl. ¶ 58). There, All-City was employed by Donnelly Mechanical. (*Id.*). "As a result of Local 28's threat of a Rat, Dan Donnelly of Donnelly Mechanical told [All-City] to leave the project at 90 Park Avenue." (*Id.* ¶ 59).

---

contractor or mechanical contractor. (*Id.* ¶ 15). When a general contractor is employed, the general contractor would hire a mechanical contractor. (*Id.* ¶ 16). Either a general or mechanical contractor hired All-City. (*Id.* ¶¶ 16, 17).

C.  51 Madison Avenue

During the fall of 2015, Local 28 engaged in similar conduct at 51 Madison Avenue.  (*Id.* ¶ 63).  All-City was employed to perform work by Brookline Mechanical. (*Id.*).  "As a result of Local 28's threat of a Rat, Gary Pezzela of Brookline Mechanical told [All-City] to leave the project at 51 Madison Avenue."  (*Id.* ¶ 64).

D.  NYU Animal Hospital

At an unspecified time, "Local 28 engaged in similar conduct at NYU Animal Hospital where [All-City] was employed by M & J Mechanical to perform work." (Second Am. Compl. ¶ 68).  "As a result of Local 28's threat, M & J Mechanical told [All-City] to leave the project at NYU Animal Hospital."  (*Id.* ¶ 69).

E.  770 Broadway

At an unspecified time, "Local 28 engaged in similar conduct at 770 Broadway where [All-City] was employed by Sound Refrigeration to perform work at a Facebook location[.]"  (*Id.* ¶ 73).  "As a result of Local 28's threat, Sound Refrigeration told [All-City] that their agreement to perform work on the second floor of 770 Broadway was terminated and Local 28 labor would be employed instead of [All-City]'s Local 295 employees."  (*Id.* ¶ 74).

F.  114 West 41st Street

At an unspecified time, "Local 28 engaged in similar conduct at 114 West 41st Street where [All-City] was employed on the 10th & 11th Floors."  (*Id.* ¶ 78).  "As a result of Local 28's threat, Equity Properties and Shawmut (the Owners) told Sound Refrigeration that because of the threat of a Rat, [All-City] was to be terminated and a contractor who employed Local 28 labor would replace [All-City]'s Local 295 employees."  (*Id.* ¶ 79).

G.  <u>225 Varick Street</u>

At an unspecified time, "Local 28 engaged in similar conduct at 225 Varick Street,

where [All-City] was employed by Kaback to perform work at a TD Bank location."

(Second Am. Compl. ¶ 83).  All-City had a purchase order to perform work and to

provide labor and services, but after receiving "pressure" from Local 28, Kaback

terminated the purchase order and advised All-City it would be terminated and a

contractor who employed Local 28 members would be used instead.  (*Id.* ¶ 84).

III.  <u>The Motion to Dismiss</u>

Local 28 moved to dismiss the Second Amended Complaint on June 28, 2019.[6]

(Mot. to Dismiss dated June 28, 2019, Dkt. No. 22).  All-City filed a response on July 30,

2019, (*see* Pl.'s Opp. to Mot. to Dismiss dated July 30, 2019 ("All-City's Br."), Dkt. No.

25), and the motion was fully briefed on August 9, 2019, when Local 28 filed a reply,

(*see* Reply in Supp. of Mot. to Dismiss dated Aug. 9, 2019, Dkt. No. 26).  Local 28 argues

that All-City's complaint should be dismissed for failure to allege sufficient facts to

support a claim for an unlawful secondary boycott or unlawful activity under the NLRA.

(Local 28's Br. at 1).  The motion should be granted, and the Court recommends that the

Second Amended Complaint be dismissed with prejudice, as detailed below.

---

[6] While the motion to dismiss purports to be by both Defendants (Local 28 and
Meslin) and implies that All-City may be attempting to renew its suit against Meslin,
(*see* Mem. of Law in Supp. of Defs.' Mot. to Dismiss dated June 28, 2019 ("Local 28's
Br."), attached to Mot. to Dismiss, Dkt. No. 22 at 2), All-City states that it is not
proceeding against Meslin, (All-City's Br. at 1).  Meslin is no longer a Defendant, and the
allegations in the Second Amended Complaint do not attempt to name him as a
Defendant.  (*See* Stipulation of Discontinuance dated May 24, 2018, Dkt. No. 12; Order
dated May 25, 2018).  In any event, "LMRA § 303 does not provide a remedy against
agents of labor unions: it only authorizes recovery of damages for unfair labor practices
against unions[.]"  *Wild Edibles Inc. v. Indus. Workers of World Local 460/640*, No.
07-CV-9225, 2008 WL 4548392, at *3 (S.D.N.Y. Oct. 9, 2008) (quotations omitted).

DISCUSSION

I.      Legal Standard for Motion to Dismiss under Rule 12(b)(6)

"The purpose of a motion to dismiss for failure to state a claim under Rule

12(b)(6) is to test the legal sufficiency of Plaintiff['s] claims for relief." *Amadei v.*

*Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106,

112 (2d Cir. 2007)).  For a 12(b)(6) motion, the Court must "construe the complaint

liberally, accepting all factual allegations in the complaint as true, and drawing all

reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804,

809 (2d Cir. 2019) (quotations and alteration omitted)*; Amadei*, 348 F. Supp. 3d at 155

("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the

court must accept as true all allegations of fact in the complaint and draw all reasonable

inferences in favor of Plaintiffs.").

Once the facts are construed in the light most favorable to the plaintiff, to avoid

dismissal, there must be sufficient facts that allege a plausible claim.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a

complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." (quotations omitted)).  "[A] district court must limit

itself to facts stated in the complaint or in documents attached to the complaint as

exhibits or incorporated in the complaint by reference.  Of course, it may also consider

matters of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time*

*Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  A complaint must

contain more than "naked assertion[s] devoid of further factual enhancement." *Id.*

8

(quotations omitted).  In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; Fed. R. Civ. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The determination whether a plaintiff has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679; *see also Escamilla v. Young Shing Trading* Co., No. 17-CV-652, 2018 WL 1521858, at *2 (E.D.N.Y. Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249 (Feb. 23, 2018).

II.     All-City Fails to State an Unfair Labor Practices Claim

Section 303 of the LMRA makes it unlawful "for any labor organization to engage in any activity or conduct" that constitutes an unfair labor practice.  29 U.S.C. § 187(a).  Unfair labor practices are defined in Section 8 of the NLRA, 29 U.S.C. § 158, and a private right of action is available to those who are injured by such practices.  29 U.S.C. § 187(b).

Unfair labor practices can take two main forms: primary or secondary activity.  "When a union targets an employer with whom it does not have a dispute (a 'secondary' or 'neutral employer'), the union is said to have engaged in 'secondary activity.'"  *Capitol Awning Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 698 F. Supp. 2d 308, 322 (E.D.N.Y. 2010) (citing *C & D Restoration, Inc. v. Laborers Local 79*, No. 02-CV-9448, 2004 WL 736915, at *3 (S.D.N.Y. Apr. 5, 2004).  Such secondary activity is prohibited by Section 8(b)(4) of the NLRA, the "secondary boycott provision."  *NLRB v. Local 3, Int'l Bhd. of Elec. Workers*, 471 F.3d 399, 402 (2d Cir. 2006); *see* 29 U.S.C. § 158(b)(4).  A

secondary boycott often has "an object of forcing that secondary employer to cease doing business with a primary employer." *NLRB v. Local 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 730 F.2d 870, 875–76 (2d Cir. 1984).  "By pressuring a secondary employer, a union may succeed in placing enough indirect 'pressure on a primary employer to force that employer to capitulate to the union's demands.  Such conduct runs counter to the public policy expressed in the NLRA.'" *Bus. Asset Relocation, Inc. v. Teamsters Local 814,* No. 14-CV-98, 2015 WL 1443267, at *4 (E.D.N.Y. Mar. 27, 2015) (alterations omitted) (quoting *C & D Restoration, Inc.*, 2004 WL 736915, at *3).

However, Section 8(b)(4) "proscribes, not all secondary boycotts, but rather 'specific union conduct directed to specific objectives.'" *See Carrier Air Conditioning Co. v. NLRB*, 547 F.2d 1178, 1188 (2d Cir. 1976) (quoting *Local 1976, United Bhd. of Carpenters v. NLRB*, 357 U.S. 93, 98 (1958)).  "It does so, moreover, in relatively precise terms." *Carrier Air Conditioning*, 547 F.2d at 1188.  To state a Section 8(b)(4) claim, a plaintiff must plead sufficient facts to demonstrate: (1) "the union or its agents engaged in, induced, or encouraged a refusal to perform services (a § 8(b)(4)(i) claim), or threatened, coerced, or restrained any person (a § 8(b)(4)(ii) claim)"; (2) "the Union's objective was preservation of work for the boycotted or threatened employer's employees or . . . the union's activities were tactically calculated to satisfy union objectives elsewhere"; and (3) "the unlawful conduct was a proximate cause of the damage." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 573 F. App'x 66, 67 (2d Cir. 2014) (citing *Carrier Air Conditioning*, 547 F.2d at 1189–91; quoting *Nat'l Woodwork Mfrs. Ass'n v. NLRB,* 386 U.S. 612, 644 (1967); and citing *Landstrom v. Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 65,* 476 F.2d 1189, 1195 (2d Cir. 1973)).

All-City alleges a Section (8)(b)(4)(ii) claim.[7]  The first element requires proof

that "the union or its agents . . . threatened, coerced, or restrained" someone, *Tru-Art*

*Sign*, 573 F. App'x at 67; however, the terms "'threats, coercion, or restraints' . . . are

'nonspecific, indeed vague,' and should be interpreted with 'caution' and not given a

'broad sweep,'" to avoid offending the First Amendment.  *Edward J. DeBartolo Corp. v.*

*Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 578 (1988) (quoting

*NLRB v. Drivers*, 362 U.S. 274, 290 (1960)).  *See King v. Constr. & Gen. Bldg. Laborers'*

*Local 79, Laborers Int'l Union of N. Am.*, 393 F. Supp. 3d 181, 201 (E.D.N.Y. 2019).

Expressive activity permissible under the First Amendment cannot constitute

threatening or coercive activity under Section 8(b)(4)(ii).  That is, "more than mere

persuasion is necessary to prove a violation § 8(b)(4)(ii)[.]"  *Capitol Awning Co.*, 698 F.

Supp. 2d at 323 (quoting *DeBartolo*, 485 U.S. at 578).

This case is about two types of alleged conduct: the distribution of flyers and the

use or threatened use of an inflatable rat at jobsites.  (*See* Second Am. Compl. ¶¶ 23–26,

55).  All-City alleges that Local 28's distribution of untruthful flyers and the rat coerced

contractors to terminate All-City's contracts.  (*See* Second Am. Compl. ¶¶ 21–27, 49–

55).  As explained below, these activities are protected by the First Amendment, and

therefore cannot, as a matter of law, be the basis of a Section 8(b)(4)(ii) claim.  *See BE &*

*K Constr. Co. v. NLRB*, 536 U.S. 516, 535–36 (2002) ("[I]n *DeBartolo*, we found that

the statutory provisions and their legislative history indicated no clear intent to reach

---

[7] Nothing in the Second Amended Complaint, or the parties' briefing, suggests
All-City alleges a Section 8(b)(4)(i) claim because there are no allegations that Local 28
"engage[d] in, or to induce[d] or encourage[d] any individual . . . to engage in, a strike or
a refusal in the course of his employment to use, manufacture, process, transport, or
otherwise handle or work on any goods, articles, materials, or commodities or to
perform any services." *See* 29 U.S.C. § 158(b)(4)(i).

the handbilling in question, and so we simply read the statute not to cover it, thereby avoiding the First Amendment question altogether[.]" (citation omitted)).

The Supreme Court has held that mere distribution of flyers, or handbilling, without more, is not proscribed by the NLRA. *Id.*; *DeBartolo*, 485 U.S. at 583–84; *e.g.*, *King*, 393 F. Supp. 3d at 202 (finding union activity like "peaceful and limited handbilling," among other things, "lack[s] the 'essential element of coercion,' and do[es] not otherwise rise to the level of 'threats, coercion, or restraints' necessary to find a violation of § 8(b)(4)(ii)(B)." (citations omitted)).  Handbilling is actionable if it "'threaten[ed], coerce[d], or restrain[ed] any person' to cease doing business with another." *DeBartolo*, 485 U.S. at 578.  Thus, for example, confrontational handbilling accompanied by "violence, picketing, or patrolling against neutral actors in a labor dispute is not protected under federal law or the First Amendment." *520 S. Mich. Ave. Assocs., Ltd. v. Unite Here Local 1*, 760 F.3d 708, 719 (7th Cir. 2014).

Similarly, "installing a giant inflatable rat outside a business entrance is permissible secondary activity; it becomes impermissible only if the rat impedes travel or is erected in the context of 'confrontational conduct' with the secondary party. Absent any specific threats to use an inflatable rat to engage in 'confrontational conduct,' however," such a threat "should be presumed lawful." *Chefs' Warehouse, Inc. v. Wiley*, No. 18-CV-11263, 2019 WL 4640208, at *8 (S.D.N.Y. Sept. 24, 2019) (citing *W2005 Wyn Hotels, L.P. v. Abestos, Lead & Hazardous Waste Laborers' Local 78*, No. 11-CV-1249, 2012 WL 955504, at *3 (S.D.N.Y. Mar. 8, 2012); and *NLRB v. Servette, Inc.*, 377 U.S. 46, 57 (1964)).  And then, it is only when a threat "reach[es] a level of physical

or, at least, symbolic confrontation" is it actionable under the statute.[8]  *Chefs'*

*Warehouse*, 2019 WL 4640208, at *7 (citations and quotations omitted) (dismissing

claims where plaintiff merely alleged the threatened display of an inflatable rat with an

intent to disrupt at one jobsite, but denying motion to dismiss where alleged threat was

made in conjunction with a threat to picket, appear with a mob, and with a stated intent

to "picket and disrupt").

The allegation about All-City's alleged distribution of flyers is limited to a single

paragraph in the complaint.  (*See* Second Am. Compl. ¶ 55).  And all All-City alleges

about the flyers is that they were "not truthful." (*Id.*).  Nothing in the Complaint even

suggest that the flyers were distributed at a particular jobsite.  Without any information

about what the flyers say, how the flyers were used, or when they were distributed, there

is no basis to infer that their use by Local 28 had any coercive or threatening effect.  The

Court can hardly conclude that the flyers, to the extent they were distributed at any

jobsite, constituted non-peaceful conduct rising to the level of confrontational and

coercive behavior.  *E.g.*, *DeBartolo*, 485 U.S. at 578 ("There is no suggestion that the

leaflets had any coercive effect . . . . There was no violence, picketing, or patrolling and

only an attempt to persuade customers not to shop in the mall.").  The alleged use of the

---

[8] The NLRB has also concluded similarly.  *See Laborers Int'l Union of N. Am., Local 872*, 363 NLRB No. 168, 2016 WL 1743243, at *1 (Apr. 29, 2016) (finding use of inflatables, including a stationary rat, not proscribed activity because it did not directly disrupt or threaten to directly disrupt a jobsite or cause more than a *de minimis* or insignificant blockage of an entrance and exit); *Sheet Metal Workers Int'l Ass'n, Local 15, AFL-CIO*, 356 NLRB 1290, 1291 (2011) ("[T]here is no contention here that the inflatable rat or [the] leaflet display threatened, coerced or restrained the hospital through violence, blocking ingress or egress or similar direct disruption of the hospital's business.  Nor is there any indication in the legislative history of Section 8(b)(4)(ii)(B) that Congress intended to prohibit these types of displays which, like the banner displays, were stationary and peaceful." (footnote omitted)).

flyers is therefore nonactionable.[9]  *See, e.g.*, *Compass Constr. v. Ind./Ky./Ohio Reg'l Council of Carpenters of United Bhd. of Carpenters & Joiners of Am.*, 890 F. Supp. 2d 836, 844 (S.D. Ohio 2012) ("[P]laintiffs have not alleged, apart from threadbare, conclusory recitals, that defendants' handbilling, bannering, or letter to Net Jets was accompanied by violence, picketing, patrolling, or that defendants' activity in any way constituted threatening, coercing, or restraining activity violative of § 8(b)(4)(ii) of the NLRA or Section 303 of the LMRA.  The alleged activities, even taken as true, simply do not rise to the level of a § 8(b)(4)(ii) violation.").

Similarly, All-City's allegations fail to contextualize the use or threatened of use of the inflatable rat at any of the subject jobsites.  The Second Amended Complaint is

---

[9] All-City's brief contains new information regarding the content of the flyers. (*See* All-City's Br. at 6, 10–12).  The Court declines to entertain these arguments because they are allegations not contained in the Second Amended Complaint.  *See Telsat v. Entm't & Sports Programming Network,* 753 F. Supp. 109, 113 n.4 (S.D.N.Y. 1990) ("It is a basic principle that a complaint may not be amended by the plaintiff's brief filed in opposition to a motion to dismiss.") (collecting cases); *see, e.g.*, *Costa v. Astoria Fed. Sav. & Loan Ass'n*, 995 F. Supp. 2d 146, 148–49 (E.D.N.Y. 2014) ("[W]hile the Plaintiff in her opposition asserts additional factual allegations not included in her Complaint, these new factual allegations are inappropriate for consideration by this Court."); *Mira v. Argus Media*, No. 15-CV-9990, 2017 WL 1184302, at *3 (S.D.N.Y. Mar. 29, 2017) ("Mira's opposition brief includes a host of new facts that were not alleged in her Complaint, as well as at least one new legal theory. . . . The Court will not consider these new facts and claims in deciding Defendants' motion to dismiss.").

Even if the Court were to consider All-City's new assertion that the flyers falsely stated All-City was "paying SUBSTANDARD WAGES AND BENEFITS to its employees performing Sheet Metal work on this Job," (All-City's Br. at 3), there is still no information about the context of their distribution and, thus, no basis to conclude that the conduct was threatening or coercive.  As such, no NLRA claim could lie.  *See, e.g.*, *Benson v. United Bhd. of Carpenters & Joiners, Locals 184 & 1498*, 337 F. Supp. 2d 1275, 1278–79 (D. Utah 2004) ("The NLRB raises no allegation that union representatives shouted, patrolled, blocked entrances, acted aggressively, or even initiated verbal conversations with the public. . . . Instead of finding coercion in the Union's actions, the NLRB focuses on the Union's *message* . . . . This is precisely the argument *DeBartolo* . . . rejected.").

devoid of any specifics about the circumstances of the use of the rat beyond the basic fact that it was at a job site.  (*E.g.*, Second Am. Compl. ¶ 23 ("Local 28 would bring a rat to the premises, and the rat would often only be removed after Plaintiff was terminated at the project.")).  Often the Complaint does not even contain any date on which a rat was displayed or threatened.  (*E.g.*, *id.* ¶ 79 ("[B]ecause of the threat of a Rat Plaintiff was to be terminated and a contractor who employed Local 28 labor would replace Plaintiff's Local 295 employees.")).  All All-City alleges, generally and repeatedly, is that "Local 28 would bring a rat to the premises," which is "approximately fifteen feet high" and "repugnant and hideous," as well as "confrontational and usually placed by Local 28 on a public thoroughfare at multiple jobsites[.]"[10]  (*Id.* ¶¶ 23–26).  This conclusory use of the term "confrontational" and the allegation that the rat was "threatened," without more, does not transform otherwise protected use and display of an inflatable rat into unlawful labor conduct.  *See, e.g.*, *520 S. Mich. Ave Assoc v. Unite Here, Local 1*, No. 10-CV-1422, 2010 WL 2836666, at *5 (N.D. Ill. July 15, 2010) ("In its complaint, Plaintiff maintains that Defendant aggressively harassed, threatened and intimidated a number of unidentified secondary or neutral parties in order to bring indirect pressure on the primary employer.  This and many of the allegations in the complaint, like the conclusory allegations in *Point Ruston*, merely recite or parrot the language of Section 8(b)(4)(ii)(B) of the NLRA." (quotations and citations omitted omitted)) (citing *Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.*, 658 F. Supp. 2d 1266 (W.D. Wa. 2009)).  Nor does the mere fact that All-City's

---

[10] All-City confusingly claims that either the inflatable rat, or Local 28 in displaying the rat, "falsely claimed or asserted to the Owner and/or the GC and/or the Mechanical and that Plaintiff was not affiliated with a Labor Union."  (*Id.* ¶ 25).  The allegation is nonsensical in light of the remainder of the pleading.

contracts were terminated after a rat was displayed, by itself, permit an inference that the rat was used in a threatening or coercive manner. All-City argues that Local 28 "knew of course, that the Rat is a signal to the public that the workers are non-union hence the symbolism inherent in the inflatable rat with the scabs on its belly" and that the "use of it on a jobsite where a competing union is working would create disharmony and trouble for the worksite." (All-City's Br. at 3–4). Such vague claims that such "signals" created "disharmony and trouble" is not enough to infer coercion.[11] *See, e.g.*, *Prime Healthcare Servs., Inc. v. Servs. Emps. Int'l Union*, 97 F. Supp. 3d 1169, 1195–96 (S.D. Cal. 2015) (finding plaintiff's allegations vague where plaintiff "failed to allege sufficient details regarding [a] protest to show that Defendants' conduct [rose] to the level of a threat, coercion or restraint under NLRA § 8(b)(4)(ii)(B)" and there was "no indication what type of conduct Defendants were engaged in" during the protest).

All-City's generic arguments to the contrary, that are untethered to the First Amendment limitations in the case law, are without any merit. All-City argues that to grant Local 28's motion to dismiss, "this Court would have to opine that making a false claim that a union project is not a union project and threatening to use a Rat unless a competing union, already on the job, is fired and the workers be replaced with workers from the union that made the threats is NOT an unfair labor practice." (All-City's Br. at 8–9). But no false claims were alleged in the Second Amended Complaint; the flyers

---

[11] Nor are such allegations sufficient to state a "signal picketing claim" under Section 8(b)(4), *i.e.* a claim that the rat was a signal to employees of another employee to cease work. *E.g.*, *King*, 393 F. Supp. 3d at 200 (finding a "comment made by one union member . . . to the effect that the new store would hire non-union workers" did not "render the rat and cockroach picketing or signal picketing that is intended to induce or encourage a work stoppage or refusal to handle goods or perform services."); s*ee infra* at 17.

were only alleged to be "not truthful" in a conclusory manner.  (*See* Second Am. Compl. ¶ 55).  To the contrary, to accept generic, nonspecific allegations proffered by All-City would expand Section 8(b)(4) to cover noncoercive conduct and raise serious First Amendment issues.

Further, All-City argues that Local 28 engaged in recognitional and organizational conduct and signal picketing, which are fact disputes requiring discovery. (All-City's Br. at 10–11).  All-City's argument puts the cart before the horse; without allegations of any confrontational conduct it cannot proceed to discovery.

Thus, All-City's claims are barred as a matter of law, and it has not stated a claim upon which relief can be granted.  It is respectfully recommended that Second Amended Complaint be dismissed.

III.   Leave to Amend

It is also recommended that the Second Amended Complaint be dismissed with prejudice because All-City has already amended twice, and All-City has not sought leave to amend for a third time.  If the Court could interpret All-City's additional facts in its opposition brief as a request to amend, the leave should still be denied for the reasons discussed above—even the additional arguments fail to provide a basis for a Section 8(b)(4) claim.  *See supra* at 14 n.9.  The dismissal should, therefore, be with prejudice. *See, e.g.*, *Liang v. Home Reno Concepts, LLC*, No. 19-CV-56, -- F. App'x --, 2020 WL 747941, at *3 (2d Cir. Feb. 14, 2020) ("Liang had three bites at the apple and was still unable to plead a RICO violation. . . . [T]here was no indication here that any of the additional facts adduced in discovery would have remedied the deficiencies in the Complaint.  The 'additional facts' Liang pointed to . . . do not remedy the Complaint's failure to allege a pattern of racketeering, as opposed to a single act.  Amendment,

17

consequently, would have been futile."); *Esposito v. New York*, 355 F. App'x 511, 513 (2d Cir. 2009) ("[I]t would have been futile to give Appellant leave to amend her complaint because she had already amended it twice."); *Nicosia v. Town of Hempstead*, No. 16-CV-1176, 2017 WL 9485669, at *12 (E.D.N.Y. June 14, 2017) (recommending dismissal with prejudice in "light of the fact that Plaintiff failed to request leave to amend his complaint, . . . especially where the complaint ha[d] already been amended once. . . . A Court may properly dismiss a complaint without granting leave to amend when the opposing party fails to cross-move for leave to do so in response to the pertinent motion to dismiss."), *report and recommendation adopted*, 2017 WL 3769246 (Aug. 28, 2017).

CONCLUSION

For reasons above, it is respectfully recommended that the motion to dismiss be granted and the Second Amended Complaint be dismissed with prejudice pursuant to Rule 12(b)(6).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this Report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision.").

SO ORDERED.

*/s/ Sanket J. Bulsara* Feb. 18, 2020
SANKET J. BULSARA
United States Magistrate Judge

Dated: Brooklyn, New York